(66 Misc. Rep. 546.)

## BOND v. ATLANTIC TERRA COTTA CO. et al.

(Supreme Court, Special Term, New York County. March, 1910.)

CORPORATIONS (§ 582*) — ACTS OF CORPORATIONS — PROTECTION OF MINORITY STOCKHOLDERS.

> Where the stockholders of several corporations agreed to form a new company, and that stock should be issued for that of the old company, and provided for cumulative voting for the officers and a certain number of directors, elected under such plan, the new company, by accepting title to the stock of the old companies, ratified the agreement, and the cor-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

poration will be restrained at the suit of a minority stockholder from reducing the number of its directors, so as to make the cumulative voting ineffective.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2330, 2331; Dec. Dig. § 582.*]

Action by Alfred H. Bond against the Atlantic Terra Cotta Company and others. Motion to continue the injunction granted.

For reversal of order granted in this opinion, see 122 N. Y. Supp. 425.

John M. Perry, for plaintiff.
Simpson, Thacher & Bartlett, for defendants.

GERARD, J. On or about December 10, 1906, a so-called committee purporting to represent the stockholders of the Atlantic Terra Cotta Company of New Jersey, the Excelsior Terra Cotta Company, and the Perth Amboy Terra Cotta Company entered into an agreement with the Knickerbocker Trust Company (called the depositary) and such holders of stock in the three terra cotta companies as should sign the agreement looking to the formation of a new company which should acquire all the stock of the three companies, the stock of the old companies to be exchanged for stock of the new company. The plaintiff was a stockholder of the Perth Amboy Terra Cotta Company. This plan was carried out, and the agreement was signed by all the stockholders of the old company. The new company, the defendant Atlantic Terra Cotta Company of New York, was formed with a capital of $3,000,000. The stock of the old companies was transferred to the new company, and all the stockholders of the old companies exchanged their stock, under the agreement and on the basis provided for in it, for stock of the new company. This agreement contained a clause which provided that "the certificate of incorporation of the new company shall further provide for cumulative voting." This agreement also provided as follows in section 10:

"The committee shall cause the board of directors of the new company to be increased as soon as it shall have accepted the said proposition for the purchase of the stock and assets of the said terra cotta companies to twelve directors, who shall be divided into three classes, to hold office respectively for one, two and three years, and at the expiration of each of said terms four directors shall be elected for three years each."

After the organization of the new company this was carried out, and there are now 12 directors, divided into three classes. About two-thirds of the stock is held by voting trustees, who are opposed to plaintiff and minority stockholders. Notice of a meeting to reduce the number of directors from 12 to 6 has been given, and it is evident that such reduction will result in depriving the plaintiff and other stockholders in sympathy with him of the representation on the board which they now have by reason of their right to cumulate their votes. If the board of directors is reduced to six, then, because of their election in classes of two at each election instead of four at each election, the plaintiff and his friends will no longer be able to elect any directors.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

The only question is whether I have the power to restrain the corpora‑ tion and its stockholders represented by their voting trustees from exercising their legal right to reduce the number of directors. The corporation was not a formal party to the agreement of December 10th, because at that time it was not in existence. The voting trustees were not parties. The plaintiff deposited his stock upon the faith of such representations, and these representations were carried out. It must be noted that the stock of the old companies at the valuation agreed on, not the properties of the old companies, was transferred to the new company by the stockholders of the old companies, who received in return stock of the new company. The provision that the com‑ mittee in their discretion, after the new company had acquired all the stock of the old companies, might have the new company acquire the properties of the old companies did not of course become operative un‑ til *after* the stock of the new company had been exchanged for stock of the old companies. The agreement provided that the new company should be a New York corporation, and the laws of the state of New York permit now, and permitted then, the reduction of the number of directors now proposed by defendants. The right to vote for di‑ rectors is a property right. Lord v. Equitable Life Assur. Soc., 194 N. Y. 212, 87 N. E. 443, 22 L. R. A. (N. S.) 420; Stokes v. Continen‑ tal Trust Co., 186 N. Y. 285, 78 N. E. 1090, 12 L. R. A. (N. S.) 969. The claim of plaintiff is that defendant company (the new company), by accepting the stock deposited under the agreement of December 10th, became bound by the terms of that agreement, and as that agreement provided for 12 directors that that number cannot be decreased. De‑ fendant claims that the agreement does not prevent any future change in the number of directors should the stockholders of the new company decide on such change, and that in any event any restriction on the power of stockholders to vote and exercise their discretion within the bounds given them by law is contrary to public policy and void. Fi‑ nally it is argued by the defendants that the agreement of December 10th formed no part of the corporate record, and was not notice to per‑ sons purchasing stock, and cannot deprive such persons of the inherent right which stockholders have in their stock to reduce the number of directors. In Bommer v. Am. Spiral Spring, etc., Co., the plaintiff invented a hinge the patent of which he agreed to assign to a corpora‑ tion or firm of the same name as defendant in return for a certain roy‑ alty. When he sued the company it set up that it was not organized until after the date of the alleged contract. The patent had been is‑ sued under the agreement to defendant and defendant had used it. The court held that the formation of the new corporation was merely colorable as far as the plaintiff's rights were concerned, and that it had taken the benefit of the agreement with notice of plaintiff's rights, and, as it had taken the benefit, was obliged to pay the royalty re‑ served. In Rogers v. New York & Texas Land Co., 134 N. Y. 197, 32 N. E. 27, a committee of bondholders who were given land for their bonds formed a plan and made a report, pursuant to which a corpora‑ tion was organized to take and hold the lands. Each bondholder was given part stock and part land "scrip," with which he could pay for land bought by him from the company to the extent of 75 per cent. of

the purchase price. The Court of Appeals in deciding that case laid down the following propositions: (1) That the corporation was charged by the knowledge of its directors, the source of its title, and the consideration paid for the land, with notice of the proceedings which led to its organization. (2) That the directions given to the purchasing committee, the report of that committee, the resolution adopting it (passed by bondholders as individuals), and the conveyances of the land were to be read in connection with the certificates (scrip) and form a part thereof as much as if embodied or indorsed upon them. (3) That the bondholders when they adopted the report of the purchasing committee entered into a contract with each other which constituted the only authority which the trustees had to convey the land (which they held for the bondholders) to the new corporation, and as that contract contained nothing inconsistent with the statute under which the corporation was organized that that contract became binding on it because with complete notice of all the facts, it took title under it. Is not this the case here? Here, instead of persons owning land in common in various counties of Texas, we have persons owning the stock of several corporations, and they make with each other an agreement for the formation of a new company, which is to issue its stock for the old stock. Why is not that new corporation bound by the contract which contains nothing inconsistent with the statute under which it is organized? By accepting title to the stock of the old companies it adopted and ratified the agreement entered into by all its stockholders, and thereby voluntarily made itself a party to the agreement and bound thereby. The last sentence is the language of the Court of Appeals, substituting the words "stock of the old companies" for "land." It seems that the agreement here, which provided for cumulative voting and a certain number of directors which would make that cumulative voting effective, is as binding on the corporation as the agreement in the Rogers Case relating to the relations of the scripholders and stockholders to each other. This case is distinguishable from cases like Munson v. Syracuse, Geneva & C. R. R. Co., 103 N. Y. 58, 8 N. E. 355, and Martin v. Remington-Martin Co., 95 App. Div. 18, 88 N. Y. Supp. 573, which hold that a corporation is not bound by an agreement made by its promoters unless it either ratifies such agreement or takes the consideration or the benefit of the contract. Motion to continue the injunction is granted. Settle order on notice.

Motion granted.